*1219 OPINION.
Thammell :
Petitioner avers that the value of its leasehold of coal lands as of April 28, 1913, the date of acquisition, was over $200,000 and that such valuation should be used as the basis for invested capital purposes in 1918 and subsequent years. Petitioner further asserts that the value of the leasehold on January 1, 1914, was the same as on April 28, 1913, less adjustment for exhaustion during the intervening period, and that such adjusted valuation should be used for invested capital purposes in 1917. Also, that it is entitled to an exhaustion allowance for each of the years involved herein upon the basis of a valuation of $200,000 as of April 28, 1913. Respondent allowed a valuation for the lease as of April 28, 19‡3, of $5,300, for all purposes, and denies that it had a greater value. It is apparent, therefore, that the only issue raised for determination here is the value of the leasehold as of the basic date, both for purposes of invested capital and exhaustion.
In the case of tangible property, such as a leasehold, acquired by a corporation in exchange for stock if the value thereof is clearly and substantially in excess of the par value of the stock exchanged, such excess may be treated as paid-in surplus in the computation of invested capital. Appeal of St. Louis Screw Co., 2 B. T. A. 649; Appeal of Henderson Overland Co., 4 B. T. A. 1088.
From a careful consideration of the evidence in the record before us, we can not escape the conclusion that the value of the leasehold of petitioner on April 28, 1913, was clearly and substantially in excess of the sum of $5,300, the value allowed by respondent and which represented the par value of the stock exchanged therefor. This conclusion is supported by the testimony of two disinterested expert witnesses, who appear to have been peculiarly and eminently qualified to testify with respect to the value of the leasehold in question, and is corroborated by other well established and uncon-troverted facts.
Krebs, a witness for the petitioner, testified that he was a mining engineer and geologist, having practiced his profession for over thirty-two years, principally in West Virginia; that he had had extended experience in the development of mining properties, such as coal, oil, and gas, and particularly in the valuation of such properties for prospective buyers, for bondholders, and parties wishing to issue bonds; that from 1921 to 1923, he was consulting engineer to the State Tax Commissioner of West Virginia in making valuations of coal properties in that State for taxation purposes. He *1220 has known of the activities of petitioner since it began operations in West Virginia, and has been familiar with the property covered by petitioner’s lease since about 1909. He testified in substance that, in his opinion, petitioner’s leasehold had a value, as of April, 1913, of $231,255, and a value as of January 1, 1914, of $217,615. This did not take into consideration the value of the electric power clause, amounting to $35,600. He further testified that, upon his estimate of the value, he recommended to a client the purchase of this property in 1920 for $750,000, and that his client thereafter made such an offer of purchase.
Taylor, a witness for the petitioner, testified that he was a consulting engineer and operator of mines, and was a graduate of the University of Pittsburgh, with degrees of Civil Engineer and Doctor of Science. Since 1887, he has been engaged, among other things, in the development and operation of mines, coke ovens and coking plants, principally in Pennsylvania, Ohio, and West Virginia. He has made many valuations of mining properties for prospective buyers and for other parties. He was familiar with petitioner’s property, and made a valuation of the leasehold as of April, 1913. Using a basis of computation entirely different from that of the witness Krebs, Taylor reached substantially the same conclusion as to its value.
The evidence also established the fact that the Spruce Bend Lease, in close proximity to petitioner’s property, was sold in 1915 for $250,000. At that time the prevailing royalty rate was the same as at the beginning of 1913. This property contained less acreage than that of petitioner, and the mining conditions were not as favorable. Other corroborative facts, of more or less minor importance, are disclosed by the record, such as the large quantity and excellent quality of coal contained in the property leased to petitioner, the location and advantageous mining conditions and timber rights, which it is not necessary to discuss in detail here.
, From all the evidence of record, it is our opinion that the leasehold of petitioner had an actual cash value of $200,000, on April 28, 1913, as claimed by the petitioner, and that the value of this leasehold in excess of the par value of the stock exchanged therefor, should be deemed to be paid-in surplus. Such valuation should, therefore, be reflected in the computation of invested capital of petitioner for all of the years involved.
Deductions for exhaustion of the value of the leasehold acquired by way of paid-in surplus, should be allowed at reasonable rates and considered in the computation of the tax liability of petitioner. Appeal of Steinbach Co., 3 B. T. A. 348. See also Appeal of Hotel DeFrance Co., 1 B. T. A. 28; Appeal of Farmers Grain Co., 1 B. T. A. 605.
*1221 The value of the lease should be spread over the unexpired life or term thereof, computed from the date of acquisition, which is 26% years.
While this proceeding purports to include the years 1921 and 1922, it appears that no deficiency has been determined by respondent for either of said years, and that the Board has no jurisdiction in respect thereof. Appeal of Cornelius Cotton Mills, 4 B. T. A. 255. The appeals for the years 1921 and 1922 are hereby dismissed.
Judgment will be entered on 15 days’ notice, under Rule 50.